UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGE BURCIAGA,

              Debtor-Appellant,

      v.

ALEX MOGLIA,

              Trustee-Appellee.

No. 18 CV 5293

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Debtor-appellant George Burciaga filed for bankruptcy a week after he was laid off. [14] at 7; [15] at 6.[1] His former employer still owed him $24,000 in accrued vacation pay, so he listed 85% of that sum as exempt, citing Illinois's protections for unpaid wages. [14] at 7; [15] at 6. *See also* 735 ILCS 5/12–803. The trustee objected, the bankruptcy court sustained the objection, and Burciaga filed a timely appeal. [14] at 7–8; [15] at 6; [1]; [4-4] at 20–21; Fed. R. Bankr. P. 8002(a)(1).

Decisions involving exemptions are final orders, *Matter of Wade*, 991 F.2d 402, 406 (7th Cir. 1993), meaning there is jurisdiction over this appeal under 28 U.S.C. § 158(a)(1). *See also Matter of Forty-Eight Insulations, Inc*., 115 F.3d 1294, 1299 (7th Cir. 1997) (finality is applied with a "relaxed eye" in the bankruptcy context). The

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

facts are not in dispute, and the review of the bankruptcy court's determinations of law is de novo. *In re Smith*, 582 F.3d 767, 777 (7th Cir. 2009).

When Burciaga filed for bankruptcy, all of his property—"every conceivable" interest that he had at that time, whether "future, nonpossessory, contingent, speculative, [or] derivative," *Matter of Yonikus,* 996 F.2d 866, 869 (7th Cir. 1993), *abrogated on other grounds by Law v. Siegel,* 571 U.S. 415 (2014)—became part of an estate, 11 U.S.C. § 541(a)(1), including his accrued vacation pay. *See id.* ("[a] debtor's contingent interest in future income has consistently been found to be property of the bankruptcy estate").[2] *See also* 11 U.S.C. § 541(b), (c)(2) (certain property, none of which is at issue here, is not included in the estate).

Burciaga then had the right to exempt some of his property from the estate. H.R. Rep. No. 95-595, at 368 (1977) ("[a]fter property comes into the estate, then the debtor is permitted to exempt it under proposed 11 U.S.C 522"). The federal exemption statute (11 U.S.C. § 522) leaves it to the states to decide what property can be exempted, but only gives them two choices: either make exempt all property falling within twelve pre-selected categories, *see* 11 U.S.C. § 522(d), or make exempt "any property that is exempt under Federal law, other than [the twelve pre-selected categories listed in 11 U.S.C. § 522(d)], or state or local law." 11 U.S.C § 522(b)(3)(A);

---

[2] In 1970, the Supreme Court held that accrued vacation pay was not "property" under the previous version of the Bankruptcy Code, putting it entirely beyond the reach of bankruptcy proceedings. *Lines v. Frederick,* 400 U.S. 18, 18 (1970). But when Congress amended the Code in 1978, it made clear that § 541(a)(1) had "the effect of overruling *Lines v. Frederick,* 400 U.S. 18 (1970)." H.R. Rep. No. 95-595, at 368 (1977).

*Matter of Hunter*, 970 F.2d 299, 303 (7th Cir. 1992). Illinois has opted for the latter, 735 Ill. Comp. Stat. Ann. 5/12-1201, and the parties agree that Illinois's exemption scheme applies. *See* [14] at 12; [15] at 8.

The issue on appeal is whether Burciaga's accrued vacation pay is "exempt under … state … law." 11 U.S.C § 522(b)(3)(A). Section 522 does not explain what it means for something to be exempt under state law, *see* 11 U.S.C. § 522, and the term "exempt" is not included in the Code's general list of definitions, either. *See* 11 U.S.C. § 101. And since "section 522(b) was a last-minute legislative compromise that left virtually no legislative history," *Matter of Geise*, 992 F.2d 651, 655 (7th Cir. 1993), the trail goes cold not far beyond the text of the statute itself. As a result, courts of appeals have granted states "great latitude in formulating their own exemptions and in establishing eligibility requirements for these exemptions." *Id*. at 655–56.

In the absence of further guidance from Congress, the basic interpretive task becomes "discern[ing] the will of the state legislature" by asking, "what was the exemption scheme that the legislature wished to make available to the state's residents as an alternative to the federal exemptions set forth in the Bankruptcy Code?" *Geise*, 992 F.2d at 658. If the state legislature has protected the asset from "all forms of process," one can infer an intent to make that asset exempt during bankruptcy proceedings, too, in part because the "term 'exemption' 'conventionally connotes protection against all forms of process,'" and in part because that approach "promotes an important congressional policy underlying the enactment of the [new] Bankruptcy Code: avoidance of 'cumbersome … state law analysis.'" *Id*. But

3

ultimately, the state legislature remains "obliged to identify [such a right] with reasonable certainty as an exemption," either in its statutes or its case law. *Id.* at 659. In other words, *Geise*'s reference to a protection against all forms of process was an example of—not a replacement for—discerning legislative intent. *See id*.

Burciaga says that his unpaid vacation time must be exempt because it is protected against all forms of process. Wage deductions and garnishments were "statutory proceeding[s] unknown to the common law," *First Fin. Co. v. Pellum*, 62 Ill.2d 86, 91 (1975), so, Burciaga argues, if there are processes for obtaining unpaid wages in Illinois, they must be statutory. *See In re Mayer,* 388 B.R. 869, 872 (Bankr. N.D. Ill. 2008). The parties mention two candidates: citation proceedings and wage deduction orders. 735 Ill. Comp. Stat. Ann. 5/2-1402; 735 ILCS 5/12-801 *et seq*. Illinois's wage deduction statute limits the wages[3] subject to collection under a deduction order to 15% of the gross amount paid for that week, 735 Ill. Comp. Stat. Ann. 5/12-803,[4] which means that the remaining 85% of a debtor's wages are protected against all forms of process in Illinois—so long as they are also protected

---

[3] The parties agree that Burciaga's accrued vacation pay counts as "wages." *See* [14] at 17–18; [15] at 7; 735 Ill. Comp. Stat. Ann. 5/12-801 (defining "wages" to mean "any hourly pay, salaries, commissions, bonuses, or other compensation owed by an employer to a judgment debtor").

[4] The statute is a bit more complicated—it limits the amount subject to collection under a deduction order to the lesser of either 15% of the gross amount paid for that week or the amount by which disposable earnings for that week exceed 45 times the minimum hourly wage (as that minimum is defined in whichever of two federal statutes sets a higher wage at the time the amounts are payable)—but since Burciaga claimed 85% of his accrued vacation pay ($20,400) as exempt in his bankruptcy filing, *see* [4-2] at 76, and since the parties use the 15/85% figure throughout their briefing, *see, e.g.*, [14] at 16; [15] at 9, I use it here, too. The analysis would come out the same either way.

during citation proceedings. Which they are: even if 735 Ill. Comp. Stat. Ann. 5/2-1402(c)(2) used to permit collection of all unpaid wages during a citation proceeding, it was amended to make clear that the "judgment debtor shall not be compelled to pay income which would be considered exempt as wages under the Wage Deduction Statute." H.R. 1794, 88th Gen. Assemb. (Ill. 1993). *See also Mayer,* 388 B.R. at 873 (noting that, even prior to amendment, the statute did not grant the power to compel the conveyance of any property exempt by statute from the enforcement of a deduction order) (citing 735 Ill. Comp. Stat. Ann. 5/2-1402(j)).[5]

*Geise* invites courts to infer an intent to exempt property from bankruptcy proceedings when the state legislature takes affirmative steps to exempt that property from all other types of process. *See Geise,* 992 F.2d 651. The problem with Burciaga's argument is that *Geiss* does not require that same inference when the state legislature has not spoken clearly.

And here, the state legislature has not spoken clearly. The first place to look is the text of the statute itself. *In re Robinson*, 811 F.3d 267, 269 (7th Cir. 2016). Section 5/12-803 exempts some wages that are subject to collection "under a deduction order" (orders issued pursuant to special proceedings described elsewhere, *see* 735 Ill. Comp. Stat. Ann. 5/12-801, 5/12-811). Even though bankruptcy filings, collection judgments, and deduction orders are each "legal remedies to manage debt, the processes are not

---

[5] Section 5/2-1402 was amended again in 2007 to require that any wages held by a third party be treated as they would during a wage deduction proceeding, and that the judge "grant[] … the statutory exemptions allowed by Section 12-803," if appropriate. 735 Ill. Comp. Stat. Ann. 5/2-1402 (k-5); S. 223, 95th Gen. Assemb. (Ill. 2007).

so similar that an exemption in one should automatically be applicable in the other without some clear indication that the legislature intended this effect." *In re Koeneman*, 410 B.R. 820, 826 (C.D. Ill. 2009).

This is apparent when § 5/12-803 is compared to other exemptions that have been expressly applied to bankruptcy proceedings. There is no shortage of them. For instance, the Illinois state legislature created bankruptcy exemptions for personal property, *In re Tucker*, 430 B.R. 499, 503 (Bankr. N.D. Ill. 2010); 735 Ill. Comp. Stat. Ann. 5/12-1001 ("[t]he following personal property, owned by the debtor, is exempt from judgment, attachment, or distress for rent"), retirement plans, *In re Templeton*, 146 B.R. 757, 761 (Bankr. N.D. Ill. 1992); 735 Ill. Comp. Stat. Ann. 5/12-1006 (certain assets "exempt from judgment, attachment, execution, distress for rent, and seizure for the satisfaction of debts"), and homesteads. *See Matter of Szekely*, 936 F.2d 897, 902 (7th Cir. 1991); 735 Ill. Comp. Stat. Ann. 5/12-901 (certain homesteads are "exempt from attachment, judgment, levy, or judgment sale for the payment of his or her debts or other purposes and from the laws of conveyance, descent, and legacy"). It has created bankruptcy exemptions in Illinois's Insurance Code, *see In re Schriar*, 284 F.2d 471, 472 (7th Cir. 1960), 215 Ill. Comp. Stat. Ann. 5/238 ("[a]ll proceeds payable because of the death of the insured … shall be exempt from execution, attachment, garnishment or other process"), and it has even created an exemption in Illinois's Health and Safety Code without using the word "exempt." *See In re McClure,* 175 B.R. 21 (Bankr. N.D. Ill. 1994) (finding an exemption for benefits received under the Illinois Workers Compensation Act); 820 Ill. Comp. Stat. Ann. 305/21 ("[n]o

6

payment, claim, award or decision under this Act shall be assignable or subject to any lien, attachment or garnishment, or be held liable in any way for any lien, debt, penalty or damages"). In each, the legislature used "language that unequivocally protects the identified property against any and all debt collection mechanisms." *In re Thum,* 329 B.R. 848, 853 (Bankr. C.D. Ill. 2005). No such broad language appears in § 5/12-803. *See also Geise*, 992 F.2d at 659 (if the Illinois legislature wishes to create exemption, it is "obliged to identify it with reasonable certainty as an exemption").

Burciaga argues that there is no need for the Illinois legislature to "protect unpaid wages from forms of process that are simply inapplicable." [14] at 21 (citing *In re Haraughty*, 403 B.R. 607, 614 (Bankr. S.D. Ind. 2009)). But bankruptcy proceedings are a "form of process" that is very much applicable to Burciaga's interest in his unpaid wages; that interest was automatically placed into an estate when Burciaga filed for bankruptcy, and that estate is subject to bankruptcy proceedings absent a legislative statement to the contrary. H.R. Rep. 95-595 at 368 (overruling *Lines v. Frederick,* 400 U.S. 18); *Yonikus,* 996 F.2d at 869. It makes good sense to expect the Illinois legislature to identify unpaid wages "with reasonable certainty as an exemption," *Geise*, 992 F.2d at 659; it opted to be responsible for doing so. *See* 735 Ill. Comp. Stat. Ann. 5/12-1201.

If the Illinois legislature intended for § 5/12-803 to apply during bankruptcy proceedings, it left unresolved a tricky contradiction. On the one hand, bankruptcy exemptions are usually assessed as of the date of the bankruptcy filing. *In re Awayda*,

7

574 B.R. 692, 695 (Bankr. C.D. Ill. 2017) ("it is the date of filing when 'the status and rights of the bankrupt, creditors and the trustee ... are fixed'") (citing *White v. Stump*, 266 U.S. 310, 313 (1924); *Owen v. Owen*, 500 U.S. 305, 314 n.6 (1991)); *In re Snowden*, 386 B.R. 730, 734 (Bankr. C.D. Ill. 2008) ("[c]ourts interpreting Illinois exemption laws have traditionally followed a 'snap-shot' rule holding that exemptions are determined as of the date of a case filing"). Applied here, the simplest application of that rule would mean that any accrued wages owed as of the bankruptcy filing would remain protected even after they were paid. But § 5/12-803 only protects "owed" wages, 735 Ill. Comp. Stat. Ann. 5/12-801, raising the inference that, once paid, they no longer qualify for protection. *See* [14] at 24 (Burciaga noting that "[i]t is likely that wages already paid to an employee are not protected under § 5/12-803"). Consistent with this reading, the Illinois legislature included none of the "traceable to" language that it has used in other instances to clarify that an exemption's protections were to continue even after the asset had changed hands or form. *See Thum*, 329 B.R. at 855 (pointing out that the legislature has exempted certain personal property "that is traceable" to other exempt payments) (citing 735 Ill. Comp. Stat. Ann. 5/12-1001(h)(1)). The parties spill a lot of ink attempting to resolve this contradiction, but the simplest explanation is better: the Illinois legislature did not intend for § 5/12-803 to apply during bankruptcy proceedings.

Burciaga draws a faulty inference from provisions contained in Illinois's personal property exemption. *See* [16] at 7–8. That exemption protects, for instance, a debtor's interest in professional books worth up to $1,500 and one motor vehicle

8

worth up to $2,400. 735 Ill. Comp. Stat. Ann. 5/12-1001(c), (d). In order to prevent a debtor from cheating the system by, for instance, selling $2,400 worth of professional books and using the proceeds to buy a car just before filing for bankruptcy, the Illinois legislature included a provision that excludes from the exemption any property purchased with the "intent of converting nonexempt property into exempt property or in fraud of his or her creditors." 735 Ill. Comp. Stat. Ann. 5/12-1001. The legislature also included a presumption that "[p]roperty acquired within 6 months of the filing of the petition for bankruptcy" was "acquired in contemplation of bankruptcy." *Id. See also* 735 Ill. Comp. Stat. Ann. 5/12-1001(j) (a similar exclusion-from-the-exemption applies to certain moneys deposited in Illinois's College Savings Pool shortly before filing for bankruptcy). These exclusions-from-the-exemption make clear that the Illinois legislature intended for the personal property exemption to apply in bankruptcy proceedings—just not if the debtor fraudulently sought to maximize the exemption. *See id.* From this, Burciaga infers that "if the legislature had intended the Wage Deduction Act's exemption not to apply in bankruptcy, it would have said so." [16] at 8. But this turns *Geise* on its head. *Geise,* 992 F.2d at 659 (the legislature is "obliged" to identify a property right "with reasonable certainty as an exemption"). The better inference is the opposite inference: the absence of an exclusion-from-the-exemption during bankruptcy proceedings for any interest in unpaid wages that was

9

fraudulently acquired implies that the Illinois legislature did not intend for § 5/12-803 to apply during bankruptcy.[6]

At bottom, the one bankruptcy court decision that favors Burciaga is, for the reasons outlined above, unpersuasive. *See Mayer*, 388 B.R. at 872 (finding that § 5/12-803 is a bankruptcy exemption because unpaid wages are protected against all forms of process). Others cited by Burciaga were interpreting and applying a different statute (Ind. Code Ann. § 24-4.5-5-105) in a state with a constitutional provision that required that the debtor's privilege "to enjoy the necessary comforts of life" be "recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale." Ind. Const. art. I, § 22; *Haraughty*, 403 B.R. at 613–14; *In re Bell*, 526 B.R. 288, 293–94 (Bankr. N.D. Ind. 2015); *In re Radez*, No. 08-13087-AJM-7, 2009 WL 1404326 (Bankr. S.D. Ind. May 15, 2009); *In re Hoetmer*, No. 10-8663-AJM-7A, 2011 WL 2893628 (Bankr. S.D. Ind. July 14, 2011).

---

[6] The wage deduction act's location in Illinois's lawbooks is not determinative, either. *Geise*, 992 F.2d at 659 (the state of Wisconsin "was under no obligation to include this property right within its general list of 'exemptions' in order to preserve it for its residents"); *McClure*, 175 B.R. at 23 ("[i]t is difficult to see why the placement of provisions of state law within a particular codification should have the substantive impact for which the trustee argues"). That being said, the wage deduction act is codified in the same chapter, act and article—and only one part away—from the "two principal categories of [bankruptcy] exemptions." *See In re Simpson*, 115 B.R. 142, 143 (Bankr. C.D. Ill. 1988) (citing the personal property exemptions, 735 Ill. Comp. Stat. Ann. 5/12-1001 *et seq.*, and the homestead exemption, 735 Ill. Comp. Stat. Ann. 5/12-901 *et seq.*); 735 Ill. Comp. Stat. Ann. 5/12-801 *et seq.* Proximity might suggest some intent to create an exemption but for the fact that § 5/12-803, unlike the sections it was codified alongside, is expressly limited to "deduction orders." 735 Ill. Comp. Stat. Ann. 5/12-803.

Other opinions interpreting § 5/12-803 have come out the other way (albeit via occasionally outdated reasoning). *See Koeneman,* 410 B.R. 820; *Thum,* 329 B.R. 848 (relying in part on a now-outdated reading of the citation proceeding statute in finding that § 5/12-803 did not protect against all forms of process); *In re Radzilowsky,* 448 B.R. 767 (Bankr. N.D. Ill. 2011) (relying on a test from an Eastern District of Tennessee case in finding that § 5/12-803 was not an exemption because property is only exempt if "the debtor can forever sequester [it] to himself and place [it] completely beyond the reach of his creditors," and observing that the test had not been met because § 5/12-803 does not apply after wages have been paid to the employee); *Wienco, Inc. v. Scene Three, Inc.*, 29 F.3d 329, 330 (7th Cir. 1994) (relying in part on a now-outdated reading of the citation proceeding statute in finding that § 5/12-803 did not protect against all forms of process, and also inapplicable here because it held that § 5/12-803 did not apply when asserted as a defense to an order issued by a district court).

Bankruptcy is concerned in part with the protection of the debtor, and occasionally it is appropriate to "look beyond the language employed and consider the purpose behind the law and the evils the law was designed to remedy"—but only when "the meaning of an enactment is unclear from the statutory language itself." *Robinson*, 811 F.3d at 271. That is not the case here. And even though exemption statutes must be construed liberally in favor of the debtor, *Matter of Barker*, 768 F.2d 191, 196 (7th Cir. 1985), the words of § 5/12-803 cannot be stretched far enough to fit the circumstances presented. Burciaga's unpaid vacation pay was protected from

11

process, but not because of an express legislative intent. Other statutes demonstrate how the Illinois legislature creates bankruptcy exemptions, and it did not exempt Burciaga's unpaid vacation pay.

The order of the bankruptcy court is affirmed. Enter judgment in favor of appellee and terminate case.

ENTER:

Date: June 3, 2019

Manish S. Shah
U.S. District Judge

12